IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEBORAH DEAR,                              :

      Plaintiff,

    v.                                    :     Case No. 3:16-cv-448

QUANTECH SERVICES, INC.,                         JUDGE WALTER H. RICE
SHORT-TERM DISABILITY
PLAN, *et al.*,                            :

      Defendants.

---

SEALED DECISION AND ENTRY OVERRULING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD
(DOC. #18); SUSTAINING DEFENDANTS' MOTION FOR JUDGMENT
ON THE ADMINISTRATIVE RECORD (DOC. #19); JUDGMENT TO
ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF;
TERMINATION ENTRY

---

Pursuant to the Employee Retirement Income Security Act of 1974, as

amended ("ERISA"), 29 U.S.C. § 1132, Plaintiff Deborah Dear seeks judicial

review of a denial of short-term and long-term disability benefits by Defendants

Quantech Services, Inc., Short-Term Disability Plan, Quantech Services, Inc., Long-

Term Disability Plan, and United of Omaha Life Insurance Company.  This matter is

currently before the Court on Plaintiff's Motion for Judgment on the Administrative

Record, Doc. #18, and Defendants' Motion for Judgment on the Administrative

Record, Doc. #19.

## I.    Background and Procedural History

Deborah Dear, who was born in 1957, started working at Quantech Services, Inc. ("Quantech"), on March 17, 2014.  She was employed as an Acquisition Specialist, with an annual salary of about $70,000.00.  This was a skilled, sedentary position, which involved sitting most of the time, with brief periods of walking and standing.  Quantech offered its employees short-term and long-term disability benefits through policies issued by United of Omaha Life Insurance Company ("United").  These benefits were part of an employee welfare benefit plan ("the Plan") governed by ERISA.  Dear became eligible for short-term and long-term disability benefits on July 1, 2014.

### A.    Plan Provisions

Under the Plan, short-term disability ("STD") benefits could be paid for up to 13 weeks.  Doc. #8-1, PageID#49.  The STD policy provided that:

*Disability and Disabled* mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred, as a result of which:

(a) during the Elimination Period [seven days], You are prevented from performing at least one of the Material Duties of Your Regular Job (on a part-time or full-time basis); and

(b) after the Elimination Period, You are:
    1. prevented from performing at least one of the Material Duties of Your Regular Job (on a part-time or full-time basis); and
    2. unable to generate Current Earnings which exceed 99% of Your Basic Weekly Earnings due to that same Injury or Sickness.

2

> Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with [your employer].

Doc. #8-1, PageID#63. A "Sickness" is defined as "a disease, disorder or condition, including pregnancy, that requires treatment by a Physician." *Id.* at PageID#65. STD benefits could be paid only if United received "acceptable proof of Disability." Supporting information could include, but is not limited to, clinical records, charts, x-rays, Proof of Earnings, and other diagnostic aids. *Id.* at PageID#59.

> The long-term disability ("LTD") policy provides as follows:

> *Disability and Disabled* mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which:

> (a) during the Elimination Period, You are prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and

> (b) after the Elimination Period, You are:

>> 1. prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and
>> 2. unable to generate Current Earnings which exceed 99% of Your Basic Monthly Earnings due to that same Injury or Sickness.

> After a Monthly Benefit has been paid for 2 years, *Disability and Disabled* mean You are unable to perform all of the Material Duties of any Gainful Occupation.

> Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with [your employer].

Doc. #8-4, PageID#339.

3

*Material Duties* means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. . . . One of the material duties of Your Regular Occupation is the ability to work for an employer on a full-time basis.

*Id.* at PageID#340.

The LTD policy has a Pre-Existing Condition Exclusion. It provides that benefits are not payable due to any disability caused by, attributable to, or resulting from a pre-existing condition which begins in the first 12 months after the employee is continuously insured under the policy. An injury or illness is considered "pre-existing" if the insured received medical treatment, advice or consultation, care or services, including diagnostic measures, or had drugs or medicines prescribed or taken in the 3 months prior to the day the employee became insured. *Id.* at PageID#332.

### B. Claim History

Ms. Dear stopped working on March 23, 2015. On April 17, 2015, she submitted a claim for STD benefits, citing "[p]ain in upper and lower back, weakness in legs, difficulty sitting or standing for long periods." She indicated that the pain had first appeared in October of 2014, and she was first treated on March 30, 2015. Doc. #8-4, PageID#303. On April 22, 2015, United notified her that it had approved her claim for the period from March 30, 2015, through April 14, 2015. *Id.* at PageID#283. STD benefits were later extended through April 30, 2015, and then May 14, 2015. *Id.* at PageID##267, 273.

4

Medical records obtained from Amol Soin, M.D., Dear's pain management specialist, show that, on March 30, 2015, Dear reported back pain, hip pain and groin pain that was made worse with activity, standing for prolonged periods of time, laying flat and bending.  She also reported weakness and numbness.  On examination, Dr. Soin noted some tenderness in Dear's thoracic and lumbar regions.  Her range of motion was limited by pain and stiffness.  Her straight leg raise, however, was negative.  He diagnosed her with displaced discs.  Doc. #8-4, PageID##286-88.  Dr. Soin treated her with lumbar epidural injections on April 3, 2015, and on April 14, 2015.  *Id.* at PageID##289-92.  On April 30, 2015, she reported problems with walking, sleeping and sitting for more than one hour.  Dr. Soin noted that she had disc bulges in T5-6 and L1-2.  He recommended physical therapy and ordered her off work until July 31, 2015.  *Id.* at PageID##278-81.

On May 1, 2015, physical therapist Cory Cummins conducted an initial evaluation of Dear.  He noted that she "demonstrates signs and symptoms consistent with a left anterior innominate rotation, lumbar radiculopathy, and potential hip joint pathology."  He concluded that her "[o]verall rehabilitation potential is good."  Although he recommended 8 weeks of skilled physical therapy and a home exercise program, Doc. #8-3, PageID##222-23, Dear attended just one session, on May 5, 2015.  Doc. #8-1, PageID#132.

On May 4, 2015, Dear had an MRI of her lumbar spine.  At L5-S1, it showed Grade 1 retrolisthesis with a mild disc bulge and small paracentral disc protrusion which "encroaches upon the descending right S1 nerve root," as well as

5

"moderate foraminal stenosis."  At L4-5, it showed minimal retrolisthesis and minimal stenosis.  Mild spondylotic changes were noted elsewhere in the lumbar spine.  Doc. #8-4, PageID##264-65.

On May 18, 2015, Dear reported to Dr. Soin that the injections had helped her upper back, but not her lower back.  He offered her a TENS unit for pain and prescribed a topical pain management cream.  *Id.* at PageID#244.

Dear asked that her STD benefits be extended beyond May 14, 2015, because she experienced "unbearable" pain after sitting or standing for just 15 minutes.  *Id.* at PageID#246.  In support of this requested extension, she submitted additional medical records from Dr. Soin.  She also submitted medical records from her family physician, Dr. Catherine Sargent, who had referred her to Dr. Soin for pain management on March 24, 2015.  Dr. Sargent had noted that Dear had bulging discs, left hip pain, and lower back pain radiating to her legs.  *Id.* at PageID##248-53.  X-rays ordered by Dr. Sargent showed "mild levoscoliosis," "slight disc degeneration and disc space narrowing," and "mild multilevel degenerative disc disease in the midthoracic region."  In the lumbar region, the x-rays showed dextrorotoscoliosis with "marked disc space narrowing at the L5-S1 level with lesser moderate changes at the L2-3 level and mild changes at other lumbar levels." Again, "multilevel degenerative disc disease" was found, particularly at the L5-S1 level.  *Id.* at PageID#255.

On June 1, 2015, at United's request, Lynn Fuller, RN, conducted a file review.  She noted that Dear had a long history of chronic back pain, and that

6

there was no evidence that a specific event had occurred on or around Dear's last

day of work that would have rendered her unable to perform work-related

activities.  She also noted that the MRI showed "some mild stenosis but no

impairing condition."  Doc. #8-11, PageID#1179.  Fuller concluded as follows:

> Based on the medical records reviewed, there is no evidence of a
> change in functional ability or evidence of a severe functional
> impairment that would preclude [Dear] from work related activities
> from 3/20/15 going forward.
>
> [Dear] would be capable of sitting for 6 hours out of 8 hour day and
> would be allowed frequent breaks for position change (change
> position every hour).  She would be capable of occasionally lifting 10
> lbs. and occasionally lift[ing] objects weighing less than 10 lbs. from
> 3/20/15 going forward.

*Id.* at PageID#1180.

On June 11, 2015, United informed Dear that her claim for additional STD

benefits had been denied.  Citing medical records, x-rays, and the MRI, United

concluded that:

> [B]ased on the medical records reviewed there is no objective medical
> evidence of a functional impairment beyond May 14, 2015, that
> would preclude you from performing your normal sedentary job duties.
> You were receiving conservative treatment of medications and
> epidural injections on April 3, 2015 and April 14, 2015.  You also had
> a thoracic and lumbar spine x-ray on March 24, 2015 that showed
> multilevel degenerative disc disease seen at L5-S1 level.  You have a
> long history of chronic back pain and there is no indication of a
> specific event that occurred on or around the last day worked that
> caused you to be [un]able to perform your sedentary work related
> activities.  The MRI that was completed on May 14, 2015 noted only
> mild stenosis but no impairing condition was noted.  A sufficient
> period of time has been allowed for the reported symptoms and
> conservative treatment.  Therefore, no benefits are payable, and your
> claim has been denied for benefits beyond May 14, 2015.

7

Doc. #8-3, PageID##230-31.

On June 20, 2015, Dear appealed this denial of STD benefits. She also submitted a claim for LTD benefits. She argued that, although her condition had improved slightly, she was still unable to sit for more than an hour or two before needing to lie down to take pressure off her spine. She further claimed that the pain interfered with her ability to focus. Doc. #8-1, PageID#138. Dear noted that Dr. Soin had not yet released her to return to work. *Id.* at PageID#140. She explained that, although she had experienced chronic back pain for quite some time, it did not become debilitating until March of 2015. *Id.* at PageID#141.

In support of her appeal, Dear submitted additional medical records from a March 19, 2015, visit to a chiropractor, Dr. Ted Poelking.[1] *Id.* at PageID##145-46. She submitted a June 19, 2015, letter from her mental health counselor, Kelly Sierra, who noticed a marked difference in Dear's physical condition beginning on March 25, 2015. *Id.* at PageID#147. In addition, she submitted records from physical therapist Cory Cummins, who noted on May 1, 2015, that Dear had trouble sitting for more than 10 minutes at a time. *Id.* at PageID#129.

In connection with the appeal, United hired April Ewing, RN, to conduct a second file review. On June 3, 2015, after reviewing Dear's medical records, Ewing concluded as follows:

_____

[1]  Although Dr. Poelking recommended a variety of treatment, Dear did not follow through with any of it due to the high cost.

8

> The clinical presentation is chronic in nature with no evidence that demonstrates a significant decline in the claimant's physical capacity. The clinical findings are inconsistent with the diagnostic results. There are no significant neurological deficits demonstrated on examination that would indicate restrictions or limitations. The conservative measures taken can be performed around the claimant's regular activities. There are no identifiable restrictions or limitations from last day worked going forward.

Doc. #8-11, PageID#1173.

On August 13, 2015, United upheld its denial of Dear's claim for STD benefits. Doc. #8-1, PageID##86-90. The letter noted that medical records from a June 18, 2015, visit with Dr. Soin indicated that sitting or lying flat for prolonged periods of time increased the pain, but that the pain was improved with rest, ice and the TENS unit. Although Dear reported pain to palpation of the lower spine, the straight leg test was negative and did not elicit pain to the lower lumbar spine. Dear reported no numbness, tingling or signs of radiculopathy. Doc. #8-6, PageID#581. An MRI of her left hip, conducted on June 30, 2015, showed no significant left hip abnormality. Doc. #8-10, PageID#1089.

United summarized its medical consultant's findings as follows:

> The file notes you presented with conditions of chronic back, left hip, and groin pain. The back pain was associated with radiation to the left leg. Treatment measures have been conservative with no significant relief in the chronic pain. The medical history was significant for depressive disorder, multiple joint pain, low back pain, sleep apnea, and smoking. The initial physical examination on March 24, 2015, revealed no signs of distress, negative straight leg raise test bilaterally, you had normal ambulation, muscle tone and strength, no contractures of joints, bones and muscles. The MRI of the lumbar spine noted a small disc protrusion at L5-SI that encroached upon the descending right SI nerve root and moderate right foraminal stenosis. Changes were noted at L4-L5 that resulted in mild foraminal and

central spinal canal stenosis. Your complaints of pain have been associated with the left lower extremity which doesn't correlate with the radiographic results. Dr. Soin's initial assessment on April 30, 2015, indicated you experienced pain with standing and sitting for prolonged periods of time in addition to walking. The physical examination noted trigger points around the paraspinal cervical muscles. You had decreased range of motion with lumbar flexion, extension, and lateral bending; however, the limitations would not have precluded you from any degree of activity. The straight leg raise test was negative bilaterally and did not elicit pain in the lower lumbar spine. There was no numbness, tingling, or signs of radiculopathy reported on the examination.

The MRI report of the left hip revealed no significant abnormality.

Additionally, you reported left knee pain, buttock pain, and pain in the ribs. There was no corresponding injury or traumatic event associated with onset of the symptoms.

The physical examinations with Dr. Soin remained unchanged with exception of the July 1, 2015, appointment. The records indicated a positive straight leg raise with ipsilateral pain, radiculopathic symptoms with pain traveling down the lower extremity, intermittent numbness and tingling down the lower extremity, and a trigger point on the ribs. The numbness and tingling was self-reported. There was no noted weakness or imbalance abnormalities documented in the lower extremities. You underwent an L5-S1 epidural injection for pain management, will continue seeing a therapist for emotional pain, and had been referred to Dr. O'Connell for pain alternatives.

The clinical presentation is chronic in nature with no evidence that demonstrates a significant decline in your physical capacity. The clinical findings are inconsistent with the diagnostic results. There are no significant neurological deficits demonstrated on examination that would indicate restrictions or limitations. The conservative measures taken can be performed around your regular activities. There are no identifiable restrictions or limitations from last date paid going forward.

In summary, the records do not support ongoing restrictions and limitations that would prevent you from performing the material duties of your regular job from May 14, 2015, and ongoing. Therefore, no further benefits are payable and your claim denial has been upheld.

10

Doc. #8-1, PageID##88-89.

With respect to Dear's claim for LTD benefits, United notified her that, because the claim was filed within the first year that Dear was eligible for coverage, it was subject to the pre-existing condition limitation for the period from April 1, 2014, through June 30, 2014. United requested additional medical records for the relevant look-back period. Doc. #8-10, PageID##1147-48.

On September 29, 2015, United denied Dear's claim for LTD benefits. Doc. #8-9, PageID##905-14. It found that she had numerous pre-existing conditions for which no benefits were available, including multiple joint pain, GERD, anxiety, pure hypercholesterolemia, arthritis, panic disorder, menopausal symptoms, abnormal weight gain, dysthymia, sleep apnea, allergies, calcification of breast, and knee pain during the relevant look-back period.

Dear's back pain and hip pain, however, were not subject to the pre-existing condition exclusion. With respect to these conditions, United concluded that "the medical information that we received fails to substantiate the basis for any restrictions and limitations that would prevent you from performing the Material Duties of your Regular Position as an acquisition specialist." Doc. #8-9, PageID#912. Although Dr. Soin had ordered her off work until July 31, 2015, no further details concerning restrictions or limitations were given.

In denying Dear's claim for LTD benefits, United relied on the September 14, 2015, file review of Terri Cortese, RN, who found that the examinations and

11

diagnostic studies did not corroborate Dear's self-reported complaints. Doc. #8-11, PageID##1151-60. Cortese acknowledged the MRI findings showing degenerative changes in the lumbar spine, a small disc protrusion encroaching on a nerve root, and moderate foraminal stenosis, and noted that Dear had received conservative therapy in the form of physical therapy and epidural injections. Cortese concluded, however, that:

> it would be reasonable for [Dear] to perform her usual activities w/o restrictions or limitations from the last day worked going forward. No obvious significant physical functional deficits to preclude previous strength demand. Despite reported symptoms, function is preserved with no focal neurological deficit noted. Clinical presentation does not reveal compromise in muscle strength. There is no evidence of a significant change in [Dear's] condition as of last day worked and there is insufficient evidence of impairment in relationship to [Dear's] c/o pain.

*Id.* at PageID#1160. Cortese further noted that, although Dear was also diagnosed with "depressive disorder, dysrhythmia, anxiety, multiple lung nodules, panic disorder, GERD, and sleep apnea, there are no restrictions or limitations associated with these diagnoses." *Id.*

After United denied her application for LTD benefits, Dear obtained counsel and filed an appeal. She submitted additional evidence, including Dr. Soin's medical records from June 18, 2015, indicating that Dear had pain to palpation in the lower lumbar spine. Although the straight leg raise was negative, her range of motion was limited by pain and stiffness. She reported that her pain was severe and that she was not able to work because she could not sit and stand

12

continuously for 8 hours; she requires frequent periods of lying flat.  Doc. #8-6, PageID#582.

Dr. Soin's medical records from July 1, 2015, indicate that Dear's straight leg raise was positive with pain traveling down her leg.  She also complained of intermittent numbness and tingling in her leg.  Doc. #8-10, PageID#1093.  On July 10, 2015, she received another lumbar epidural steroid injection.  Doc. #8-5, PageID#458.  On August 10, 2015, she reported that this had helped with her back pain, but the pain in her hip was still severe.  She maintained that she was still unable to return to work due to pain.  *Id.* at PageID#464.

Dear also submitted medical records from September 1, 2015, from the Orthopedic Institute of Dayton, noting curvature of her lumbar spine, and SI joint dysfunction.  Records also indicated that her left pelvis was higher than her right pelvis, she had SI joint dysfunction, and radicular symptoms radiating down her left leg.  Doc. #8-8, PageID#792.  An EMG nerve study conducted on October 13, 2015, showed positive waves in the lower left lumbar paraspinals, consistent with irritation commonly seen with degenerative changes in the spine.  *Id.* at PageID#785.  More physical therapy was recommended.  Doc. #8-5, PageID#420.

At an assessment on November 11, 2015, the physical therapist ranked Dear's overall rehabilitation potential as "fair" and recommended eight weeks of therapy to help with "poor biomechanical faults in sitting, standing, and with her gait," which contribute to the severity of her symptoms. He noted the "significant impairments demonstrated by her MRI reports."  Doc. #8-5, PageID#471.

On April 13, 2016, Dear returned to her chiropractor, Dr. Poelking, who, at counsel's request, reviewed her medical records and conducted a physical examination. He noted that, despite multiple attempts with treatment, she still complained of pain in her lower back and hip, and surgery was not likely to have a positive outcome. He found restriction "throughout the lower lumbrosacral and pelvic regions, with tenderness to palpation, muscle guarding and edema." He also noted reduced range of motion in every direction. Bilateral straight leg raise was positive. He concluded that Dear was not employable and her prognosis for recovery was "extremely unlikely." He noted that the MRI and EMG show "a level of pathology that will continue to generate pain associated with activity. Any continued standing and/or sitting would be contraindicated for her condition." Doc. #8-8, PageID##760-62.

On April 16, 2016, at counsel's request, physical therapist Rick Wickstrom conducted a Functional Capacity Evaluation ("FCE"). He concluded that Dear "is physically limited to below a sedentary strength level, with stipulation of no more than frequent sitting. Her profound physical limitations and chronic pain prohibits her from sustained, full-time employment." Doc. #8-5, PageID#417. According to Wickstrom, she "demonstrated poor standing tolerance, poor sitting tolerance, poor bending tolerance, and low agility with consistent pain behaviors that were consistent with her reported symptoms and MRI of the lumbar spine on 5/14/15 that revealed multilevel degenerative disc disease and spondylosis." *Id.*

14

On May 6, 2016, Trish Pellett, a vocational consultant, classified Dear's job as a sedentary, skilled position.  Doc. #8-5, PageID#396.  Dear submitted her report in support of her appeal.  In addition, Dear submitted proof that she had been awarded Social Security Disability Income benefits beginning in September of 2015.  Doc. #8-8, PageID#758.

On appeal, United ordered a file review by James Lambur, M.D., a board-certified orthopedic surgeon.  On May 27, 2016, he concluded that, based on medical records from March 20, 2015, through May 13, 2016, Dear could return to work "at the sedentary level with the opportunity for positional change while sitting at will," but should "avoid frequent episodes of bending," and should not stoop, kneel or crawl.  Doc. #8-7, PageID#734.  He noted that "EMG studies of the left lower extremity are not notably aberrant nor are MRI studies of the lumbar spine indicative in and of themselves of any significant functional compromise."  *Id.* at PageID##733-34.  He acknowledged "narrowing at the L4/L5 and L5/S1 segment," but found "no evidence radiographically of nerve root compression."  *Id.* at PageID#734.

Dr. Lambur found Dr. Soin's recommendation that Dear remain off work was inconsistent with the medical records.  He recommended more physical therapy and anti-inflammatory medication.  Although he stated that "there could be evidence of symptom magnification and exaggeration perhaps emanating from diagnosis of depression reaction for secondary gain," he noted that this was beyond his purview.  *Id.* at PageID#735.  He also noted that there was no

15

evidence that Dear had received medication or diagnostic measures for chronic back, hip or groin pain from April 1, 2014, through July 1, 2014, during the pre-existing condition look-back period.  *Id.*

At United's request, Dr. Lambur completed an Addendum to his report on June 15, 2016, addressing the FCE completed by Rick Wickstrom.  Dr. Lambur disagreed with Wickstrom's conclusions, finding his report to be "somewhat linguistically embellished."  Lambur noted that, although the MRI shows "multi-level degenerative disc disease as well as spondylosis," there is "no substantive clinical correlation of untoward effect from these degenerative changes which provide indication of nerve root compression or functional deficiency."  Moreover, Dr. Soin's notes state that the "lumbar MRI is non-diagnostic."  Doc. #8-4, PageID#377.  Dr. Lambur acknowledged "mild scoliotic deformity based upon pelvic ubiquity," but found "no consistent reports of dramatic decrease in ROM of either cervical and/or lumbar spine."  He found "no evidence of severe functional impairment which would limit the return to the workplace of this individual at the sedentary level."  *Id.* at PageID##377-78.

On June 26, 2016, in reliance on Dr. Lambur's report, United upheld its denial of LTD benefits, concluding that Dear's clinical and diagnostic findings did not support deficits in her functional ability that would have restricted or limited her from performing her sedentary occupation.  Doc. #8-7, PageID##694-98.

Dear filed suit on October 24, 2016, seeking judicial review of United's denial of STD and LTD benefits.

## II.     Standard of Review

Under ERISA, a participant or beneficiary of an employee welfare benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  "[A] denial of benefits challenged under § 1132 (a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

In this case, the Plans grant United, as the claims administrator, discretionary authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the policies.  Doc. #8-1, PageID#59; Doc. #8-4, PageID#335.  Where such discretionary authority is granted, the Court must uphold the administrator's decision unless it was "arbitrary and capricious."  *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014).  In reviewing the denial of benefits, a court is limited to the evidence that was available to the administrator when the final decision was made.  *Id.*

The "arbitrary and capricious" standard is highly deferential.  A decision "must be upheld if it results from a deliberate principled reasoning process and is supported by substantial evidence."  *Id.* at 1065 (internal quotations omitted).  Even though the evidence may be sufficient to support a finding of a disability, the decision must be upheld "if there is a reasonable explanation for the

17

administrator's decision denying benefits in light of the plan's provisions."
*Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010).

Although this is a highly deferential standard, the Court cannot simply rubber
stamp the decision of the plan administrator.  In determining whether there is a
"reasoned explanation" for the decision, the Court must still review the "quantity
and quality of the medical evidence and the opinions on both sides of the issues."
*Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005) (internal
quotation omitted).

Because United is both the plan administrator and the payor for the short-
term and long-term disability plans, one other consideration applies.  Where the
insurer is charged with determining eligibility *and* paying benefits, an inherent
conflict of interest exists because the insurer has a financial incentive to deny
claims.  The Court must, therefore, take this into consideration in reviewing the
decision.  *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).


**III.    Analysis**

Dear alleges that United acted arbitrarily and capriciously in denying her
claims for short-term and long-term disability benefits.  United, however, maintains
that its denial was supported by substantial evidence and by the language of the
Plan.  United acknowledges that Dear has presented objective medical evidence
verifying certain spinal abnormalities.  It also acknowledges her subjective
complaints of pain.  Nevertheless, United concluded that there is insufficient

objective medical evidence to support a finding that Dear's medical conditions are severe enough to render her unable to perform at least one of the material duties of her job.

Having reviewed the quality and the quantity of the evidence, and the opinions on both sides of the issue, the Court finds that, although Dear's medical records could also support a finding of disability, United's denial of short-term and long-term disability benefits was not arbitrary and capricious.

### A. Short-term Disability Claim

The Court turns first to arguments raised by Dear in connection with the termination of her STD benefits. She alleges that: (1) United's claim administration is unmoored from the textual demands of its policy; (2) United ignored medical evidence of functional deficits; (3) United fails to offer any reasonable explanation as to why her evidence was insufficient; and (4) United fails to recognize that she performs a skilled job.

### 1. Claim Administration "Unmoored" From Textual Demands of Policy?

As previously noted, the Plan provides that an employee is considered to be disabled if, "because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred, as a result of which . . . You are prevented from performing at least one of the Material Duties of Your Regular Job." Doc. #8-1, PageID#63. It further provides that "[d]isability is determined relative to Your ability or inability to work." *Id.* Dear maintains that United's

19

termination of her STD benefits is "unmoored from the textual demands of the policy." Doc. #18, PageID#1239.

There is no question that Dear's back problems constitute a "Sickness," defined in the Plan as "a . . . condition . . . that requires treatment by a Physician." Doc. #8-1, PageID#65. The Plan, however, does not define what constitutes "a significant change in Your mental or physical functional capacity."

Dear maintains that the evidence presented is sufficient to show that, in March of 2015, she experienced a significant change in her physical functional capacity that prevented her from performing the material duties of her job. Although she had suffered from back pain for several months, she was able to work full time until March of 2015, when—according to her—the pain became disabling. She began to have trouble sitting, standing or walking for any length of time. In response to the increase in pain, Dear sought assistance from a chiropractor, from her family doctor, and then from a pain specialist who gave her lumbar epidural injections.

Dear maintains that the reports of the two nurses who reviewed Dear's medical records at United's request are at odds with these facts. They both found that she had not shown a significant change in physical functional capacity that rendered her unable to work. April Ewing concluded that "[t]he clinical presentation is chronic in nature with no evidence that demonstrates a significant decline in the claimant's physical capacity." Doc. #8-11, PageID#1173. Likewise, Lynn Fuller concluded that "there is no evidence of a change in functional ability or

20

evidence of a severe functional impairment that would preclude [Dear] from work related activities from 3/20/15 going forward." *Id.* at PageID#1180. According to Dear, these findings are inexplicable in light of the fact that, by the end of March of 2015, the pain was so severe that she could no longer stand or sit for any significant period of time.[2]

United, however, was not required to award benefits based solely on Dear's subjective complaints of increased pain, and her own assessment of her physical functional capabilities. As noted above, the Plan provides that STD benefits would be paid only if United received "acceptable proof of Disability," which could include clinical records, charts, x-rays, and other diagnostic aids. Doc. #8-1, PageID#59. United concluded that Dear failed to offer acceptable proof of a significant change in her physical functional capacity, in the form of objective medical evidence to corroborate her subjective belief that her medical condition had deteriorated to the point that she was unable to work after March of 2015.

Nurse Ewing acknowledged that the MRI showed some abnormalities in Dear's spine. She determined, however, that "[t]he clinical findings are inconsistent with the diagnostic results," and that "[t]here are no significant neurological deficits demonstrated on examination that would indicate restrictions or limitations." She further noted that the conservative measures recommended by

_____

[2]  Dear notes that Cory Cummins's physical therapy notes from May 1, 2015, indicate that she could sit for no more than ten minutes at a time. This time limit, however, appears to be self-reported, not a clinical finding. It is listed under the heading "Problems & Goals." *See* Doc. #8-1, PageID#129.

21

Dr. Soin could be performed around Dear's regular activities. Doc. #8-11, PageID#1173. Nurse Fuller also determined that there was no evidence of severe functional impairment and that, if Dear were permitted to change positions every hour, she would be capable of sitting for six hours a day. *Id.* at PageID#1180.

United notes that, on May 1, 2015, physical therapist Cory Cummins found that Dear's overall rehabilitation potential was good. He expected that eight weeks of physical therapy would be sufficient to address her condition. Doc. #8-3, PageID#222. Moreover, although Dr. Soin ordered her off work until July 31, 2015, he provided no explanation for such an order, and neither he nor any of Dear's other treating physicians identified any specific restrictions or limitations that would have prevented her from performing her job.

Dear further argues that United's letter denying her claim for STD benefits sheds no light on the question of whether she had shown a "significant change" in her physical functional capacity that rendered her unable to work. The Court disagrees. The June 11, 2015, denial letter noted that Dear had "a long history of chronic back pain and there is no indication of a specific event that occurred on or around the last day worked that caused you to be [un]able to perform your sedentary work related activities." Doc. #8-3, PageID##230-31.[3] United

————————————————

[3] Contrary to Dear's suggestion, the Court does not read this statement to require that a "significant change" in functional capacity come about as the result of an accidental injury or the *sudden onset* of an illness or other medical condition. A significant change in functional capacity can also gradually take place over an extended period of time. In any event, the ultimate question is whether there is

22

acknowledged that x-rays and an MRI showed degenerative disc disease, and mild stenosis; however, there was no "impairing condition."  Moreover, all of the prescribed treatment was conservative, consisting of medications, physical therapy and a few epidural injections.  United explained that "based on the medical records reviewed there is no objective medical evidence of a functional impairment beyond May 14, 2015, that would preclude you from performing your normal sedentary job duties."  *Id.*

In the Court's view, United has provided a reasoned explanation for rejecting Dear's claim that she had a significant change in her physical functional capacity that rendered her unable to perform at least one of the material duties of her job. As such, the Court rejects Dear's claim that United's denial of STD benefits is "unmoored from the textual demands of its policy."

### 2. Evidence of Functional Deficits

Citing *Shaw v. AT&T*, 795 F.3d 538, 548-49 (6th Cir. 2015), Dear next argues that United acted arbitrarily and capriciously in ignoring favorable medical evidence of her functional deficits.  She claims that the medical records of her treating physicians, her chiropractor and her physical therapist show that she is in constant pain, has restricted range of motion, and is incapable of remaining seated for any significant period of time without lying down to relieve the pressure on her spine.  Dear maintains that her medical records adequately demonstrate loss of

―――――――――――――――

sufficient objective medical evidence to support a finding that, as a result of that change, the employee can no longer perform the material duties of his or her job.

23

physical functionality which rendered her unable to perform at least one of the material duties of her job, the ability to work full time.

Although the plan administrator need not give special deference to the opinions of treating physicians, it may not refuse to credit reliable evidence presented by the claimant, including the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 834 (2003). However, a plan administrator does not arbitrarily discount a treating physician's opinion if that opinion is not supported by objective medical evidence. *Filthaut v. AT&T Midwest Disability Benefit Plan*, 710 F. App'x 676, 682 (6th Cir. 2017).

In this case, United did not ignore the clinical evidence presented by Dear. It acknowledged that Dear's MRI indicated retrolisthesis, disc protrusion, an encroachment of the right S1 nerve root, and some foraminal narrowing. Nevertheless, all four of United's file reviewers explained that, despite Dear's subjective complaints of pain and claimed inability to sit or stand for extended periods of time, there was no objective medical evidence to support a finding that her condition was severe enough to render her incapable of performing the demands of her job. The MRI showed no nerve root compression, and physical examinations showed no significant neurological deficits that would necessitate restrictions or limitations in Dear's ability to work.

United concluded that, even though Dr. Soin had ordered her off work through July 31, 2015, there was no objective clinical evidence to support the need for such an order. Based on the foregoing, the Court rejects Dear's claim

that United acted in an arbitrary and capricious manner in ignoring clinical evidence of her functional deficits.

### 3. Sufficiency of Evidence

Dear next argues that United failed to offer a reasonable explanation as to why her evidence was insufficient, as required by 29 C.F.R. § 2560.503-1. The Sixth Circuit has held that a plan administrator's failure to offer a reasonable explanation for a decision is an arbitrary act in and of itself. *See Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006). Again, Dear cites to her x-rays and MRI, which show spinal abnormalities, to other clinical records documenting her complaints of chronic pain and decreased range of motion, and to the fact that Dr. Soin ordered her off work through July 31, 2015.

As discussed above, the Court finds that United offered a reasonable explanation for denying Dear's STD claim. Despite the spinal abnormalities and Dear's subjective complaints of pain, United found insufficient *objective clinical evidence* to support a finding that her medical conditions were severe enough to justify restrictions or limitations on her ability to work.

### 4. Skilled Nature of Job

Finally, Dear argues that United failed to recognize in its denial letters that, in addition to the fact that her job as an Acquisitions Specialist is a sedentary position, it is also a skilled position. Likewise, in their reports, neither Nurse Fuller nor Nurse Ewing discusses the skilled nature of Dear's job. Dear maintains that her

constant pain made it impossible to focus, rendering her unable to satisfy the demands of her skilled position as an Acquisitions Specialist.

Citing *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 510-11 (6th Cir. 2005), Dear argues that United's failure to consider the skilled nature of her position renders its decision arbitrary. She maintains that the key issue is not whether she is capable of *sitting* for 8 hours a day, but whether she is capable of *performing her job* as an Acquisitions Specialist.

Although there is no specific discussion in the denial letters of the skilled nature of Dear's job, this does not mean that United failed to consider it. Nurse Fuller and Nurse Ewing both indicated that they had reviewed Dear's job description. Doc. #8-11, PageID##1165, 1177. Likewise, United's letter upholding the denial of the claim for STD benefits indicates that her job description was reviewed. Doc. #8-1, PageID#87. United nevertheless concluded that she had failed to present sufficient objective medical evidence to corroborate her self-reported limitations and subjective complaints of pain. It can be inferred that this includes not only her alleged inability to sit, stand or walk for extended periods of time, but also her alleged inability to focus as a result of the pain. The Court therefore rejects Dear's argument that United's failure to consider the skilled nature of her position renders the decision arbitrary and capricious.

## B. Long-term Disability Claim

With respect to United's denial of her LTD claim for benefits, Dear alleges that: (1) United cherry-picked clinical evidence and opinion evidence; (2) United,

26

through Dr. Lambur, engaged in character assassination of her and unreliably invalidated the FCE; (3) United failed to address the demands of a skilled occupation; (4) Dr. Lambur opines recklessly; and (5) United withheld evidence and operated under a conflict of interest.

### 1. Cherry-Picking of Evidence

Dear first takes issue with Dr. Lambur's summary of Dr. Poelking's April 18, 2016, report. Lambur states that Dr. Poelking's records from his physical examination identify "positive bilateral straight leg raising test with reduced ROM of the lumbar spine without identification of specific limitations *nor do the records contain concerns relative to impact on function, if any.*" Doc. #8-7, PageID#730 (emphasis added).

Dear notes that, to the contrary, Dr. Poelking's report states that, in his professional opinion, she "is not employable." In his opinion, her MRI and EMG results indicate that her "prognosis for recovery and employment is extremely unlikely. These objective studies contain a level of pathology that will continue to generate pain associated with activity. Any continued standing and/or sitting would be contraindicated in her condition." Doc. #8-5, PageID##398-99.

Although Dr. Lambur's characterization of Dr. Poelking's findings may not have been completely accurate, Dr. Lambur did fully explain why the objective clinical evidence did not support a finding that Dear's spinal abnormalities were severe enough to render her unable to perform her job. He noted that the MRI of Dear's lumbar spine did not, in and of itself, indicate significant functional

27

compromise. There was no evidence of compression of the nerve root and no physical signs to support a diagnosis of severe impairment of function. He further noted that the EMG studies were within normal limits. Doc. #8-7, PageID##733-34. As the Sixth Circuit noted in *Morris v. American Electric Power Long-Term Disability Plan*, 399 F. App'x 978, 987 (6th Cir. 2010), a plan administrator's disregard of a treating physician's assessment is not arbitrary when, as here, that assessment is not supported by objective evidence.

Dear also argues that Dr. Lambur fails to adequately address Rick Wickstrom's finding on the FCE that her functional capacity is lower than sedentary. But again, Dr. Lambur fully explained why he rejected Wickstrom's FCE. In his opinion, Wickstrom's finding concerning the "absence of plantar flexor reflexes" was not clinically significant. Dr. Lambur again noted that although the MRI shows that Dear suffers from multi-level degenerative disc disease and spondylosis, there is "no substantial clinical correlation of untoward effect from these degenerative changes which provide indication of nerve root compression or functional deficiency." Doc. #8-7, PageID#708. Dr. Lambur further explained why he disagreed with Wickstrom's conclusion concerning Dear's restrictions and limitations. Dr. Lambur found that none of the other spinal abnormalities would limit Dear's return to the workplace. *Id.* at PageID##708-09.

United notes that Dr. Lambur is a board-certified orthopedic surgeon. In contrast, neither Dr. Poelking nor Rick Wickstrom is a medical doctor, and their reports are based largely on Dear's subjective complaints of pain. Under these

circumstances, the fact that United gave Dr. Lambur's opinion more weight than those of Dr. Poelking and Rick Wickstrom does not render the decision arbitrary and capricious.

Dear also notes that, although she provided United with a copy of her award of Social Security Disability benefits, neither Dr. Lambur's report nor United's final denial letter mentions this award. In *Bennett v. Kemper National Services, Inc.*, 514 F.3d 547 (6th Cir. 2008), the Sixth Circuit held that a plan administrator's failure to discuss an award of Social Security Disability benefits may, under some circumstances, weigh in favor of a finding that the plan administrator failed to engage in a deliberate, principled reasoning process. This is particularly true when the plan administrator has encouraged the claimant to apply for Social Security Disability benefits, financially benefits from the receipt of those benefits, and then fails to explain why it has taken a different position on the question of disability. *Id.* at 554-55.

In Dear's case, however, there is no evidence that Quantech encouraged her to apply for Social Security Disability benefits or financially benefitted from her receipt of those benefits. United's letter denying her appeal for LTD benefits indicates that the Social Security award letter was considered. Doc. #8-7, PageID#695. That letter, however, merely states that Dear is entitled to disability benefits beginning September of 2015. It contains no information concerning the basis for the award, and it is not clear whether it was based on a physical or mental disability. Doc. #8-8, PageID#758. Under these circumstances, United's

failure to discuss why it reached a different conclusion cannot be considered arbitrary and capricious.

### 2. Character Assassination

Dear also objects to two other statements in Dr. Lambur's reports: (1) his statement that "there could be evidence of symptom magnification and exaggeration . . . for secondary gain," Doc. #8-7, PageID#735; and (2) his characterization of Wickstrom's opinion on the FCE as "linguistically embellished," Doc. #8-7, PageID#377.

Citing *Bennett,* 514 F.3d at 554-55, Dear argues that if Dr. Lambur did not find her complaints to be credible, he should have examined her, as permitted by the Plan, rather than conduct a file review. In *Calvert v. Firstar Finance Inc.*, 409 F.3d 286 (6th Cir. 2005), the court noted that, although there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination," a failure to conduct a physical examination, when the Plan reserves the right to require one, may "in some cases" raise questions about the "thoroughness and accuracy" of the decision. *Id.* at 295-96.

In this case, Dr. Lambur does not make any finding that Dear's subjective complaints of pain and limited range of motion are not credible. Rather, in response to a query by United, he stated that, although it appeared that there "could be" evidence of symptom magnification, this was beyond his purview. Doc. #8-7, PageID#735. He acknowledged her spinal abnormalities, but nevertheless concluded that the *objective medical evidence* submitted for his

30

review did not support a finding that she had a severe impairment of *function* that would prevent her from performing her job duties. Absent objective clinical evidence to support a finding of disability, it is not clear what would have been gained by another physical examination.

Dear also argues that if Dr. Lambur disagreed with Wickstrom's assessment of her functional capabilities, Dr. Lambur had a duty to contact him to discuss the matter. The Sixth Circuit has held to the contrary. *See Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 393-94 (6th Cir. 2009) (rejecting claim that the person conducting the file review must interview the treating physician before rejecting his findings). Here, Dr. Lambur reviewed Wickstrom's findings and gave detailed reasons for rejecting them. He had no duty to contact Wickstrom to discuss the FCE.

### 3. Failure to Recognize Skilled Nature of Job

As with United's denial of her application for STD benefits, Dear again argues that United failed to explain how she is able to perform her skilled job duties when she is unable to concentrate due to the pain. For the reasons previously set forth, the Court finds that United's failure to specifically discuss the skilled nature of her job does not render the decision to deny LTD benefits arbitrary and capricious.

### 4. Dr. Lambur

Citing two other cases in which courts rejected opinions by Dr. Lambur, Dear argues that Dr. Lambur is a "known commodity" and that he opines

31

recklessly. *See Mokbel-Aljahmi v. United Omaha Life Ins. Co.*, Case No. 16-2616 (6th Cir. Aug. 28, 2017) (rejecting Dr. Lambur's opinion because he did not examine the claimant, and "most importantly," did not consider all of the available medical evidence); *DeMaree v. Life Ins. Co. of N. Am.*, Case No. 1:09-cv-01564 (N.D. Ind. June 1, 2011) (finding Lambur's report to be "error-ridden, internally inconsistent, and lacking in any real analysis.").

United denies that Dr. Lambur is a "known commodity." It has hired him as a file reviewer just once before. Moreover, the deficiencies at issue in the two cases cited do not appear to apply here. Dr. Lambur considered all relevant clinical evidence in this case and, although he disagreed with the findings of Dr. Poelking and Rick Wickstrom, he articulated his reasons for rejecting their assessments of Ms. Dear's functional capabilities.

###    5.    Conflict of Interest

As previously noted, a plan administrator who both determines eligibility for benefits and pays those benefits operates under an inherent conflict of interest that must be taken into account in determining whether a denial of benefits is arbitrary and capricious. *MetLife v. Glenn*, 554 U.S. 105 (2008). Dear argues that, based on the foregoing arguments, the Court should find that United's conflict of interest played a role in the denial of benefits.[4]

---

[4]    Dear also argues that United's failure to produce, in discovery, the specific incentives that were available to employees who met certain financial and operational goals shows bad faith. United maintains that, because it offers no incentives for its claim analysts to deny claims, such discovery requests were

As United notes, however, the mere existence of a conflict of interest does not render its decision arbitrary and capricious.  Rather, Dear must present "significant evidence" that the conflict "actually affected or motivated the decision at issue."  *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007).  She has failed to do so.

In this case, Dear was given a full and fair opportunity to present evidence to support her claims for STD and LTD benefits.  In the Court's view, the evidence presented could very well support a finding of disability.  Nevertheless, the question at issue is whether United's denial of Dear's claims was arbitrary and capricious.  United's decision must be upheld if it resulted from a deliberate principled reasoning process and is supported by substantial evidence.

The Court concludes that, even factoring in United's conflict of interest, the denial of Dear's claims was not arbitrary and capricious.  All evidence presented was fully considered.  Four separate file reviewers concluded that, although Dear has a history of chronic back pain and objective clinical evidence shows several spinal abnormalities, there is insufficient objective medical evidence to support a finding that her medical condition affects her physical functional capacity to such an extent that she is no longer able to perform at least one of the material duties of her job.  United has provided a reasonable explanation for its denial of benefits in light of the Plan provisions.

---

irrelevant.  Moreover, the information sought by Dear contains "sensitive information," and Dear filed no motion to compel production of this material.

## IV. Conclusion

For the reasons set forth above, the Court concludes that United's denial of Dear's applications for short-term and long-term disability benefits was not arbitrary and capricious. Accordingly, the Court SUSTAINS Defendants' Motion for Judgment on the Administrative Record, Doc. #19, and OVERRULES Plaintiff's Motion for Judgment on the Administrative Record, Doc. #18.


Judgment shall be entered in favor of Defendants and against Plaintiff.


The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: September 28, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE